**UNITED STATES of America, Plaintiff,**

v.

**Michael DESANTIS and Frank Lombardo, Defendants.**

No. CR–92–0415.

United States District Court, E.D. New York.

Sept. 3, 1992.

Pamela J. Davis, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Michael S. Washor, New York City, for Michael Desantis.

Jay M. Zerin, Zerin & Cooper, New York City, for Frank Lombardo.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendant Desantis has moved this court for an order that would grant him the following relief: (1) that the government be directed to respond to his request for a Bill of Particulars; (2) that the government reveal to him similar act evidence it intends to offer at trial pursuant to Rule 404(b), Fed.R.Evid.; (3) that the government fully comply with Rule 16, Fed.R.Crim.P.; (4) that the court conduct a hearing to determine the audibility of intercepted and recorded conversations; (5) that the court direct to be stricken portions of the indictment he characterizes as surplusage; (6)

that Count Eight be severed from the indictment; (7) that Counts Four and Five be severed from Counts Six and Seven; (8) that items seized during the execution of search warrants be suppressed; and (9) that the court conduct a pretrial hearing to determine the admissibility of co-conspirators' statements.

The defendant Lombardo seeks the following relief in a motion he filed: (1) that he be tried separately from co-defendant Desantis or, in the alternative, that Counts One, Two and Five, in which he is named, be severed from Counts Three, Four, Six, Seven and Eight in which he is not named; (2) that multiplicitous counts in the indictment be consolidated; (3) that surplusage in the indictment be struck, and (4) that he receive "necessary discovery and particulars."

The Superseding Indictment charges both defendants with conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. § 892 (Count One); conspiracy to collect extensions of credit by extortionate means in violation of 18 U.S.C. § 894 (Count Two); charges Desantis only with financing extortionate extensions of credit in violation of 18 U.S.C. § 893 (Count Three) and with making extortionate extensions of credit in violation of 18 U.S.C. § 892 (Count Four); charges both defendants with collecting extensions of credit by extortionate means in violation of 18 U.S.C. § 894 (Count Five); charges Desantis only with making extortionate extensions of credit in violation of 18 U.S.C. § 892 (Count Six) and with collecting extensions of credit by extortionate means in violation of 18 U.S.C. § 894 (Count Seven) and finally, charges Desantis only with possession of a firearm being a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), 924(a)(2) (Count Eight).

## DISCUSSION

### A. *Defendants' Motion for Bill of Particulars*

The defendants' requests for particulars are detailed in letters dated April 27th and June 29th, 1992 from Michael Washor, Esq., counsel to Desantis, to Assistant United States Attorney Pamela Davis. In his letter dated April 10, 1992, Mr. Washor requests information regarding a comprehensive list of items pursuant to Rule 16, Fed.R.Crim.P., and the Fifth and Sixth Amendments to the United States Constitution. *See* Exhibits A, B and D to the motion of defendant Desantis. The government's response in letters dated April 17th, May 1st and July 2nd, 1992, for the most part, reject the requests.

At the outset, it is noted that in the Statement of Facts of the Government's Memorandum in Opposition to Defendants' Omnibus Motions, pages 5–7, the government elaborates upon the Indictment and, in essence, gives the defendants an overview of its case. At page 10 of that Memorandum, the government recites that it has already provided the defendants with copies of their statements, criminal records, reports of examinations and a set of all tape recorded conversations made during the investigation of this case. The government has also extended to them an invitation to examine all documents and other tangible evidence at a time that is convenient to them. The defendant Desantis requests that he be advised as to the amounts of money borrowed from him, where the transactions took place, the terms upon which loans were made, the names of unidentified co-conspirators, the names of witnesses or potential witnesses, etc. The defendant Lombardo requests that transcripts of the audio-cassettes be provided to him, a description of his alleged role in the conspiracy together with dates, times and places of his participation as an alleged co-conspirator, details of meetings between a named extortion victim and Lombardo and between law enforcement agents and Lombardo and notes taken during meetings between the government and cooperators.

In *United States v. Crozzoli*, 698 F.Supp. 430, 435–36 (E.D.N.Y.1988) this court had occasion to repeat the oft-cited principle that:

Rule 7(f) of the Fed.R.Crim.P. permits a defendant to seek a bill of particulars to identify with specificity the nature of the

> charge pending against him so that he may prepare for trial, avoid surprise and to be able to claim double jeopardy should he be prosecuted again for the same offense.... The decision to grant or deny a request for a bill of particulars rests within the sound discretion of the court.... As a general rule if the information the defendant seeks is to be found in the indictment or in some acceptable alternative form, no bill of particulars is required.... (Citations omitted).

The indictment, together with the information provided to the defendants in other acceptable forms, satisfies such obligations as Rule 7(f) imposes upon the government. The charges pending against the defendants are defined with sufficient specificity to enable them to prepare for trial without being surprised and to plead the bar of double jeopardy at another time should that become necessary. To direct the government to comply with the requests made by the defendants would be to direct the government to particularize all of its evidence and the theory of its case, which it is not required to do.

If the government has not already done so, it is hereby directed to provide the defendants, at least twenty-one days prior to trial, with the general nature of other crimes, wrongs or acts it intends to offer in evidence in accordance with Rule 404(b), Fed.R.Evid. The refusal of the government to provide the defendants with transcripts of the tapes the government has already provided to them is difficult to understand. If those transcripts are as yet in draft form, the government is directed to provide them but only on condition that the defendants agree in writing that the draft transcripts are being provided for the sole purpose of assisting their pretrial preparation and that no attempt will be made to use or allow any other person to use the draft transcripts or make reference to them at trial or in any other proceeding. If the transcripts are finalized, the government is directed to provide them. It is hoped that should there be differences among the parties as to the accuracy of a government-proposed transcript, those differences can be resolved prior to trial toward the end that a stipulation as to accuracy can be arrived at.

B. *The Defendants' Rule 16 Requests*

The defendants' requests pursuant to Rule 16, Fed.R.Crim.P. and the Fifth and Sixth Amendments to the United States Constitution are listed in Exhibit D annexed to the Desantis notice of motion. It is a fairly typical boilerplate compilation of approximately forty-seven items filling seven typewritten pages. The government's response to the majority of those requests is contained in Exhibit E annexed to the Desantis motion. Comment has already been made as to the government's refusal to provide transcripts of recorded conversations and will not be repeated. The defendants have made many requests pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *United States v. Bagley,* 469 U.S. 1016, 105 S.Ct. 427, 83 L.Ed.2d 354 (1984). In response to those requests the government merely acknowledged its *Brady* and *Giglio* obligations. In this regard observations made by the Court in *Pennsylvania v. Ritchie,* 480 U.S. 39, 59–60, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987) may be useful.

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files.... Although the eye of an advocate may be helpful to a defendant in ferreting out information, ... this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), it is the State which decides which information must be disclosed. Unless defense counsel becomes aware that other exculpato-

ry evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. *See Weatherford v. Bursey,* 429 U.S. 545, 559 [97 S.Ct. 837, 846, 51 L.Ed.2d 30] (1977) ("There is no general constitutional right to discovery in a criminal case and *Brady* did not create one.")

■ The defendant Desantis seeks disclosure of statements made by him to third parties which are subsequently set forth in reports prepared by a government agent. That request was considered in *In re United States,* 834 F.2d 283 (2d Cir.1987) which decided that such statements were not discoverable.

Except as indicated with respect to the transcripts of the recordings already furnished to the defendants, their motions for a bill of particulars and Rule 16 discovery are denied.

### C. *Audibility Hearing*

■ The defendants' request for an audibility hearing is opposed by the government simply because the government disagrees with their claim that the recordings are inaudible. The government also cites *United States v. Arango–Correa,* 851 F.2d 54, 58 (2d Cir.1988) for the principle that "a tape recording is audible unless 'the unintelligible portions are so substantial as to render the recording as to the whole untrustworthy.'" The government misreads *Arango–Correa* which held that the "fact that some of a tape recording is inaudible does not by itself require exclusion of the tape," and thus confuses audibility with admissibility. The leading case in this circuit is *United States v. Bryant,* 480 F.2d 785 (2d Cir.1973) which held that "[w]hether a recording is sufficiently audible to be *probative* is a matter within the sound discretion of the trial judge" and where an objection to audibility is made the correct procedure is for the judge to have had the tape played out of the jury's presence so that he can rule on the objection before the jury heard the recording. 480 F.2d at 789–90. The defendants' request for an audibil-

ity hearing is granted. The parties are directed to confer with the deputy clerk of the court to arrange for a mutually convenient time for that hearing.

### D. *Surplusage*

■ In Count One of the indictment, reference is made to the Luchese Organized Crime Family, its structure and that Desantis is a made member and Lombardo is an associate of that Family. The defendants move to strike those references as being surplusage and prejudicial and inflammatory pursuant to Rule 7(d), Fed.R.Crim.P., which provides that "[t]he court on motion of the defendant may strike surplusage from the indictment or information."

■ The guiding principle, succinctly stated in 1 C. Wright, *Federal Practice and Procedure* § 127 at 426 (1982) is that "... a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard, ..." That principle was more recently restated in *United States v. Scarpa,* 913 F.2d 993, 1013 (2d Cir.1990) in which the court also said that "[i]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *United States v. De Palma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978). The inquiry central to the disposition of this motion is whether evidence of the defendants' affiliation with the Luchese Organized Crime Family is admissible and relevant to the charge. The charge in which the claimed surplusage appears is Count One which alleges a conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. § 892. The defendants assert that the language they challenge offends the rule because it is not an element of the crime charged and because "it does not form the basis for a substantive, predicate, or overt act in furtherance of the alleged conspiracies." The defendants' assertions lack merit. The controlling principle is satisfied if the evidence of the allegation is admissible and relevant to the charge, it need not also, in itself, be an

element of the charge. The statute (18 U.S.C. § 892) unlike 18 U.S.C. § 371, does not require proof of an overt act as an element of the offense. It provides that "[w]hoever makes any extortionate extension of credit, *or conspires to do so,* shall be fined ..., etc." (emphasis added). The absence of an allegation of an overt act is, therefore, of no legal significance.

The issue of admissibility is resolved by a reference to the statute. 18 U.S.C. § 892(b)(3)(A), (B) provides:

(b) In any prosecution under this section, if it is shown that all of the following factors were present in connection with the extension of credit in question, there is prima facie evidence that the extension of credit was extortionate, ...

\* \* \* \* \* \*

(3) At the time the extension of credit was made, the debtor reasonably believed that either

(A) one or more extensions of credit by the creditors had been collected by extortionate means, or the non-repayment thereof had been punished by extortionate means; or

(B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the non-repayment thereof.

The defendant urges upon the court the view that the statute is directed to the "conduct of the defendant, not the victim's individual state of mind" and cites *United States v. Zimmitti,* 850 F.2d 869, 873 (2d Cir.1988) to support that view. Even a casual reading of *Zimmitti* would reveal that it is inapposite. The quoted phrase, when put in context, conveys a completely different thought and in relation to a different statute:

Section 894(a)(1) of 18 U.S.C. makes it unlawful to "knowingly participate[ ] in any way, or conspire[ ] to do so, in the use of any extortionate means ... to collect or attempt to collect any extension of credit." 18 U.S.C. § 894(a)(1). "An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the per-

son, reputation, or property of any person." *Id.* § 891(7). This Court has observed that "the term 'other criminal means' was meant to supplement the context of 'violence' " and that in *passing the statute, "congress was concerned primarily with the use of actual and threatened violence by members of organized crime engaged in loan sharking...." United States v. Pacione,* 738 F.2d 567, 571–72 (2d Cir.1984). We have ruled further that "[i]t is [the] 'calculated' use of threatening gestures or words to collect credit extensions which Congress has made criminal.... In other words, it is the conduct of the defendant, not the victim's individual state of mind to which the thrust of the statute is directed." (Citation omitted) (emphasis added).

When 18 U.S.C. § 891(7) is read together with the foregoing excerpt from *Zimmitti* and with § 892(b)(3)(A), (B) the admissibility of evidence of organized crime affiliation is convincingly established. § 891(7) provides:

An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person.

Consideration has also been given to the balance to be struck between probative value and prejudice (Rules 403 and 404(b), Fed.R.Evid.) and the court concludes that the balance weighs heavily in favor of probative value. For all of the foregoing reasons, the motion to strike language claimed to be surplusage is denied. *See also Carbo v. United States,* 314 F.2d 718, 739–42 (9th Cir.1963).

### E. Joinder and Severance

The defendants seek to sever Count Eight which charges Desantis with being a prior felon who was in possession of a weapon, from the other counts of the indictment. They seek to sever Counts Four and Five which name Charles Kerins as the extortion victim, from Counts Six and Seven, which name David Kleger as the extor-

tion victim. The defendant Lombardo asserts that he should be tried separately because the gun charge against Desantis will necessarily prejudice him at trial.

These motions are made pursuant to Rules 8 and 14, Fed.R.Crim.P. Rule 8 provides:

**Joinder of Offenses and of Defendants**

(a) **Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) **Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ Rule 8(a) permits joinder of offenses and Rule 8(b) permits joinder of defendants. Offenses may be joined against a defendant when they are based upon the same act or transaction, or based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are of the same or similar character. The thread unifying these factors is the policy determination that the benefits of trial efficiency weigh more heavily in the balance than the prejudice that may occur to the accused. Counts Four and Five being of the same character and being parts of a common scheme are properly joined with Counts Six and Seven. In Counts Four and Five, Kerins is the alleged victim of the same loansharking extortion scheme as is Kleger in Counts Six and Seven.

The joinder of Count Eight, in which only the defendant Desantis is charged with being a felon in possession of a weapon is proper, the government argues, because it arose out of the same transaction as the loansharking conspiracy in that the gun was openly displayed at the place where the loansharking business was conducted and where Kleger was beaten and Kerins was threatened by Desantis. The gun, it is reasoned, is therefore a "tool of the loansharking trade." *See, e.g., United States v. Wiener,* 534 F.2d 15 (2d Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976).

"Rule 8 does not explicitly provide a standard that governs when multiple offenses *and* multiple defendants are joined in one indictment.... We have permitted multiple defendants facing multiple charges to move for [severance under 8(a) and 8(b)] but we invoke only Rule 8(b) to test the validity of joinder regardless of which type of severance is sought. ... [O]ur cases indicate that 'when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a).' ... The effect of construing Rule 8 in this fashion is that multiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a 'series of acts or transactions constituting an offense or offenses.' "

■ Research has not uncovered prior judicial discussion of the precise meaning or the parameters of the phrase "charged acts [that are] part of a series of acts or transactions constituting an offense or offenses." If the question posed is whether possession of a gun may be said to be part of a series of acts constituting the offenses of extortion proscribed by 18 U.S.C. §§ 892, 894, the court would unhesitatingly hold that it is. That conclusion would be based upon the phrase "extortionate means" in § 892(b)(3)(A) and in § 894(a) which is defined in 18 U.S.C. § 891(7) as meaning "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation or property of any person." Guns in this

context, are fairly synonymous with violence and evidence tending to establish the use or the express or implied use of a gun would be admissible against a defendant charged with violations of 18 U.S.C. §§ 892 and 894. Cases such as *Wiener* and *United States v. Terry*, 702 F.2d 299 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) relied upon by the government in opposition to the defendants' motion as to Count Eight address the admissibility of guns in prosecutions for violations of the narcotics laws. Having determined that Count Eight is not improperly joined with the other counts, the question remains whether that Count should, nevertheless, be severed.

Rule 14, Fed.R.Crim.P. is captioned "Relief from Prejudicial Joinder" and provides in relevant part as follows:

> If it appears that a defendant ... is prejudiced by a joinder of offenses ... in an indictment ... or by such joinder for trial together, the court may order an election or separate trial of counts, ... or grant whatever other relief justice requires.

The essence of Rule 14 is prejudice and the problem is particularly troublesome where a defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) in an indictment in which he is also charged with other crimes. The difficulty is manifest in the variety of views expressed on the problem. In *United States v. Daniels*, 770 F.2d 1111 (D.C.Cir.1985), the defendant was convicted of armed bank robbery, carrying a pistol without a license, and possession of a firearm subsequent to a felony conviction. Evidence of his prior felony conviction was received at trial as an element of the possession charge but would have been inadmissible in a separate trial on the bank robbery and carrying an unlicensed pistol charge. The nature of his prior felony conviction was not made known to the jury. Instead, a stipulation was read stating simply that the defendant had been convicted of an unspecified felony. The government conceded that the stipulation would not have been admissible in a separate trial of the other counts. On appeal, he argued

that he was impermissibly prejudiced by the trial court's refusal to sever the counts. Declining to hold that joinder in such cases is a *per se* abuse of discretion and that prosecutors and judges are well advised to proceed cautiously when called upon to decide similar severance motions, the court wrote, at page 1118:

> In making it illegal for ex-felons to possess firearms, Congress was motivated by an understandable desire to restrict ownership of weapons by those whose pasts suggested even a minimal proclivity towards crime. *See* 18 U.S.C. (App. I) § 1201; S.Rep. No. 1097, 90th Cong., 2d Sess. 2–3, reprinted in 1968 U.S.Code Cong. & Ad.News 2112, 2113–14. Unfortunately, a side consequence of the law has been to provide federal prosecutors with a powerful tool for circumventing the traditional rule against introduction of other crimes evidence. Whenever an ex-felon is charged with committing a crime involving the use of a gun, prosecutors may inform the jury of the defendants' prior convictions merely by taking the time to include a charge of firearms possession.
>
> \* \* \* \* \* \*
>
> We do not believe Congress had such a tactic in mind when it criminalized possession of firearms by ex-felons, and we do not believe the federal judiciary should encourage or countenance this use of the law. The exclusion of other crimes evidence is not simply a "technicality" designed to prevent law enforcement personnel from doing their job; it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence. That exclusion and that precept must not be discarded in the name of judicial efficiency.

*See also United States v. Dockery*, 955 F.2d 50 (D.C.Cir.1992); *United States v. Busic*, 587 F.2d 577 (3d Cir.1978), *rev'd on other grounds*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). The primary concern in weighing the prejudice of joinder against its benefits is the wise conservation of judicial resources. Weighing these competing considerations the court

concludes that the balance must be struck in favor of prejudice. The judicial resources of this court will not be unduly strained by a severance of Count Eight which could surely be tried within two days. *United States v. Silva,* 745 F.2d 840, 844 (4th Cir.1984) (possession charge "requires little more than proof of possession and the existence of the prior record"), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985).

### F. *Motion to Suppress*

 The defendant Desantis seeks to suppress the items seized at his business premises and from his person and his automobile based upon his assertion that the Magistrate issued the search warrant in reliance upon "stale" representations and that material information was omitted from the application for the search warrant. The defendant also asserts that the warrant did not adequately describe the area to be searched and therefore the search of premises adjacent to the premises that were described was unlawful and the items seized from it should be suppressed.

 *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) teaches that in deciding whether to issue a warrant, the magistrate must make a practical, common sense determination that there is a fair probability that contraband or evidence will be found in a particular place. That determination is to be based upon all the facts and circumstances described in the affidavit before him, including the credibility and the basis of the knowledge of the persons furnishing hearsay information. The duty of the court in reviewing that determination is simply to ensure that the magistrate had a substantial basis for finding that probable cause existed for issuing the warrant. The magistrate's finding of probable cause is entitled to substantial deference. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). The magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of the warrant. *United States v. Jackstadt,* 617 F.2d 12, 13 (2d Cir.) (per curiam), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980) and 449 U.S. 1084, 101

S.Ct. 870, 66 L.Ed.2d 809 (1981). Having reviewed the affidavits in support of the application for the search warrants, the issuance of which the defendant challenges, the court finds that those challenges have no merit. Those affidavits "present a picture of continuing .conduct," not merely "isolated instances of illegal acts" and contain information which is relatively fresh. A practical, common sense reading of those affidavits belie the claim that the information presented is stale. The contention that the agents executing the search warrant entered the wrong premises is not based upon personal knowledge of the defendant's attorney and is insufficient. *United States v. Gillette,* 383 F.2d 843, 848 (2d Cir.1967). The receipt for the property seized specifically identifies the premises searched as the premises described in the warrant with particularity. In any event, the warrant being facially valid and executed in good faith, the items seized are admissible pursuant to *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

 The defendant Desantis seeks a pretrial hearing to determine the admissibility of co-conspirator statements. The leading case in this circuit provides no basis for such a hearing. *See United States v. Geaney,* 417 F.2d 1116 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

 Finally, the defendants contend that charging them with a conspiracy to violate 18 U.S.C. § 892 and also a conspiracy to violate 18 U.S.C. § 894 is multiplicitous. Their contention has no merit. Multiplicity occurs when a single offense is charged in several counts in one indictment. *United States v. Free,* 574 F.2d 1221 (5th Cir.), *cert. denied,* 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978); *United States v. Israelski,* 597 F.2d 22, 24 (2d Cir.1979). The test for determining whether an indictment is multiplicitous is whether each count requires proof of an additional fact which the other does not. When the charges alleged to be multiplicitous are similar conspiracies, resolution of the issue depends upon whether the separate conspiracies are each based upon the general conspiracy statute, 18 U.S.C. § 371, or are

based upon separate statutes prohibiting specific types of conspiracies. *See United States v. Anderson,* 872 F.2d 1508 (11th Cir.), *cert. denied,* 493 U.S. 1004, 110 S.Ct. 566, 107 L.Ed.2d 560 (1989). Count One charges a conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. § 892. Count Two charges conspiracy to collect extensions of credit by extortionate means in violation of 18 U.S.C. § 894. Count Two requires proof of an additional fact which Count One does not, namely, that the defendant used extortionate means to collect or attempt to collect the extension of credit.

For the foregoing reasons, the defendants' motions are denied, except as to the motion to sever Count Eight which is granted.

SO ORDERED.