UNITED STATES of America, Appellee,

v.

Kevin GILLIAM, Defendant–Appellant.

No. 1253, Docket 92–1591.

United States Court of Appeals,
Second Circuit.

Argued March 19, 1993.

Decided June 2, 1993.

**98**

Roger S. Hayes, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Richard B. Zabel, and Paul G. Gardephe, Asst. U.S. Attys., of counsel), for appellee.

Joseph G. Braunreuther, New York City (Watson, Farley, & Williams, of counsel), for defendant-appellant.

Before: ALTIMARI and WALKER, Circuit Judges, and MORRIS E. LASKER, Senior Judge United States District Court for the Southern District of New York, sitting by designation.

ALTIMARI, Circuit Judge:

Defendant-appellant Kevin Gilliam appeals from a final judgment of the United States District Court for the Southern District of New York (Owen, *J.*) convicting him, following a three-day jury trial, of violating 18 U.S.C. § 922(g)(1) (1988), which prohibits a convicted felon from possessing a firearm in or affecting commerce. The district court sentenced Gilliam to 180 months imprisonment, three years supervised release, and a special assessment.

At trial, Gilliam and the government stipulated that the weapon in question had travelled in interstate commerce, and that Gilliam had previously been convicted of a felony punishable by imprisonment for more than one year. Gilliam further proposed a stipulation to the prior conviction element of § 922(g)(1), to concede the element and thereby keep the fact of his prior conviction from the jury. This proposal was rejected by the government, and the district court refused to require the government to accept it.

On appeal, Gilliam contends principally: (1) that the district court erred in denying his proposal to stipulate to his prior conviction, since evidence of his prior conviction was more prejudicial than probative when he was willing to concede the relevant element of the crime; and (2) that the district court erred in admitting a statement by a police officer into evidence where he contends that the statement was hearsay and was "devastating" to his defense. For the reasons below, we affirm the conviction.

## BACKGROUND

In the early morning hours of April 18, 1991, an unidentified man placed an emergency "911" call to the New York City Police Department. The caller told the police that a black male wearing a brown leather jacket was carrying a gun in the vicinity of 115 West 137th Street in Manhattan. Officers Neil Nappi and Robert Dempsey responded to the call.

When they arrived at the scene, they spotted two men in front of the building at 115 West 137th Street. One of the men, Andre Bailey, fit the description given by the caller. The man standing next to Bailey was defendant-appellant Kevin Gilliam. Upon seeing the two men, Officer Nappi drove his patrol car over to the curb at an angle, so that his car's headlights shone directly on Gilliam and Bailey. At that point, the two men were facing each other, five to seven feet apart. There was no one else in their vicinity.

The officers first focused their attention on Bailey, since he fit the description given by the anonymous caller. According to Officer Nappi, however, when he looked at Gilliam he noticed what appeared to be a gun in Gilliam's hand. After seeing the patrol car, Gilliam and Bailey said nothing but began to walk away in different directions. Nappi, without saying anything to Dempsey about the gun, exited his patrol car and followed Gilliam while Dempsey exited and followed Bailey.

While following Gilliam, Nappi observed Gilliam holding what looked to be a silver-colored firearm in his hand. Gilliam then stepped off the street curb and, according to

Nappi, tossed the gun under a car's front bumper. Upon seeing this, Nappi ran up and arrested Gilliam, handcuffing him against the hood of the parked car. Subsequently, Nappi found a loaded .380 caliber semi-automatic pistol in the "ready to fire" position under the parked car.

Meanwhile, Dempsey had stopped Bailey, patted Bailey down, and found nothing. Dempsey instructed Bailey to leave the area, which he did.

After the officers brought Gilliam back to the precinct house for processing, the anonymous caller phoned again. This time, the caller complained that the officers had missed another gun at the scene, that they had walked right by a second gun resting on top of a garbage can. The caller also informed police that the man in the brown jacket had returned to the area to retrieve the gun.

In response to this call, Officer Dempsey instructed police units to return to the area and to search for a man bearing Bailey's description. The officers assigned found Bailey at the scene of the arrest. They brought Bailey back to the station house and issued him a summons for returning to the scene. However, they did not find any other gun, either on Bailey or in the area.

Because Gilliam had a prior conviction on his record, he was charged under 18 U.S.C. § 922(g)(1), which makes it a crime for "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition." He was tried by a jury before the United States District Court for the Southern District of New York (Owen, *J.*).

Prior to trial, Gilliam and the government agreed to a stipulation concerning Gilliam's prior conviction. The stipulation precluded documentary or testimonial proof of the conviction, thus preventing the jury from knowing the circumstances and type of the offense. The parties also agreed to stipulate to the interstate commerce element of § 922(g)(1).

During jury selection, Gilliam proposed to go a step further and stipulate not only to the prior conviction itself but also to the prior conviction *element* of § 922(g)(1), thus conceding the element and removing it from the jury's consideration. Under such a stipulation, the jury would only be charged that it needed to find whether Gilliam had possessed the gun. The jury would not be told that an element of the crime was Gilliam's felonious history or indeed that he had a felonious history. The district court could simply instruct the jury that, under the circumstances of the case, Gilliam was guilty of the charged crime if the government proved beyond a reasonable doubt that he was in possession of the firearm found at the scene.

The government opposed the stipulation and the district court denied the request, stating that:

> if the jury were to be told that in order to find him guilty of this crime all they got (sic) to do is find he possessed a gun ... from the, sort of the collective common sense knowledge of hundreds and hundreds of thousands of New Yorkers, the answer to that question in their own minds might be, so what, a lot of people have guns, what's the big deal[?].

During the trial, the district court read a stipulation to the jury that Gilliam had been convicted of a crime punishable by imprisonment for a term exceeding one year. At no point in the trial were any underlying facts to the prior conviction revealed. Rather, only the fact that there was a prior conviction was mentioned. In its charge to the jury, the district court gave a limiting instruction:

> Now, I want to firmly instruct you in this connection that the prior conviction that is an element of the charge here and is not disputed, is only to be considered by you for the fact that it exists. And for nothing else. You are not to consider it for any other purpose, you are not to speculate as to what it was for or anything else. It is not to be in any way considered by you on whether it is more likely than not that the defendant was in knowing possession of the gun that is charged, which is the disputed element of the offense here charged.

At the close of trial, the jury found Gilliam guilty of a violation of § 922(g)(1). He was

subsequently sentenced to 180 months imprisonment, supervised release, and a special assessment. Gilliam now appeals his conviction on two grounds: (1) the district court erred in denying his proposed stipulation; and (2) the court erred in allowing the government to introduce the statements of the anonymous caller about the second gun.

## DISCUSSION

### I. *The Stipulation Issue*

Gilliam argues that the district court should have accepted his proposed stipulation to the prior conviction element of 18 U.S.C. § 922(g)(1), taking the element away from the jury's consideration. He contends that the government would not have been prejudiced in any way if he had been allowed to concede the prior conviction element of § 922(g)(1). In fact, he was willing to take the burden of proving the prior conviction element off the prosecution's hands. Because Gilliam had stipulated to the interstate commerce element of § 922(g)(1), the government would then only have had to prove that he was in possession of a gun.

This Court has noted that prejudicial taint can, in the context of admissible evidence, be caused by the introduction of a defendant's prior conviction, and has protected against that taint when necessary. *See, e.g., United States v. Ortiz,* 857 F.2d 900, 905 (2d Cir. 1988); *United States v. Mohel,* 604 F.2d 748, 751 (2d Cir.1979). The Federal Rules of Evidence, recognizing the problem, only allow proof of prior convictions in limited circumstances. *See, e.g.,* Fed.R.Evid. 404(b) (allowing prior convictions only to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); Fed.R.Evid. 609 (allowing proof of prior convictions only to impeach witnesses, subject to limitations on age, character, and prejudicial effect).

■■■■ As we have stated, however, "[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980). A prior conviction is not prej-

udicial where the prior conviction is an element of the crime; rather, it "prove[s] the fact or issue that justified" its admission. *Id.* Section 922(g)(1) outlaws possession of a weapon that has travelled in interstate commerce by an individual previously convicted of certain felonies. The fact that Gilliam was convicted of a felony is an intrinsic issue in a § 922(g)(1) trial, and proof of a prior conviction is necessary for the offense to be substantiated.

The fact of Gilliam's prior conviction, therefore, is no more prejudicial than Officer Nappi's testimony that the gun was in Gilliam's hand before it was recovered under the car. Nappi's testimony was crucial to the element of possession, just as Gilliam's felonious history was crucial to the prior conviction element. Where the prior conviction is essential to proving the crime, it is by definition not prejudicial.

It is true, though, that the fact of a prior conviction may have an additional and adverse effect on the § 922(g)(1) defendant, if the jury is unduly influenced by the prior conviction. But where the district court issues a proper curative instruction, we must presume that a conscientious jury will only use the proof of the prior conviction to satisfy the element of the crime. *See United States v. Pforzheimer,* 826 F.2d 200, 205 (2d Cir. 1987) (stating that it is a fundamental proposition that juries follow curative instructions); *Figueroa,* 618 F.2d at 943 ("Whatever the criticism of [curative] instructions, they remain an accepted part of our present trial system.") (footnote omitted).

Gilliam nevertheless argues that there is no harm done if he concedes the prior conviction element and proceeds to trial merely on the possession issue. He points out that in such a situation, an ounce of prevention is worth a pound of cure: there would be no need for a curative instruction, because the potential prejudice would be prevented. But there is harm done by his proposal, harm to the judicial process and the role of the jury in determining the guilt or innocence of the accused as charged. Gilliam's proposal violates the very foundation of the jury system. It removes from the jury's consideration an element of the crime, leaving the jury in a

position only to make findings of fact on a particular element without knowing the true import of those findings. Again, Gilliam is not charged with mere possession of a weapon, but with possession by a convicted felon. The jury speaks for the community in condemning such behavior, and it cannot condemn such behavior if it is unaware of the nature of the crime charged.

Gilliam misunderstands the role of the jury in a criminal trial. Our constitution guarantees the accused the right of a trial by a jury of his peers, primarily in order to ensure that the accused is judged by prevailing community mores. As Judge Learned Hand stated, the institution of the jury "introduces a slack into the enforcement of law, tempering its rigor by the mollifying influence of current ethical conventions." *United States ex rel. McCann v. Adams*, 126 F.2d 774, 776 (2d Cir.1942). As representatives of the people, the jurors can rebuke the accused for violation of community standards, morals, or principles. *See, e.g., Witherspoon v. Illinois*, 391 U.S. 510, 519 n. 15, 88 S.Ct. 1770, 1775 n. 15, 20 L.Ed.2d 776 (1968) ("[O]ne of the most important functions any jury can perform ... is to maintain a link between contemporary community values and the penal system...."). The jury is the oracle of the citizenry in weighing the culpability of the accused, and should it find him guilty it condemns him with the full legal and moral authority of the society. The public listens with rapt attention to the jury's pronouncement of guilt or innocence, for in that singular moment the convictions and conscience of the entire community are expressed.

It is unnecessary to engage in an extensive dialogue on jury nullification or to summarize the Founding Fathers' belief in the right of the jury to say "no." It is only necessary to discern Congressional intent and to understand the nature and function of a jury, to wit: to be informed of the nature of the crime, as well as to find the defendant guilty of the offense at issue beyond a reasonable doubt. Without full knowledge of the nature of the crime, the jury cannot speak for the people or exert their authority. If an element of the crime is conceded and stripped away from the jury's consideration, the ju-

rors become no more than factfinders. The jury must know why it is convicting or acquitting the defendant, because that is simply how our judicial system is designed to work.

Removing an element of a crime from the jury's deliberation would be similar to allowing the jury to render a special verdict. We have, however, traditionally supported a preference for juries to render general verdicts in criminal cases. *See United States v. Pforzheimer*, 826 F.2d 200, 205–06 (2d Cir. 1987). We have also rejected similar claims to Gilliam's in other contexts. Where the potentially prejudicial evidence directly establishes an element in the case, we have not allowed the defendant to stipulate to that element in order to bar the evidence. In *United States v. Gantzer*, 810 F.2d 349, 351 (2d Cir.1987), we affirmed the district court's denial of defendant's motion to stipulate to the obscenity element of the crime of sending obscene materials through the mail in violation of 18 U.S.C. § 1461 (1982). Ganzter argued that the admission into evidence of the photographs themselves was not necessary if he stipulated to their obscenity. We found, however, that "the obscenity of the photographs Gantzer mailed was a critical element of the crime charged." *Gantzer*, 810 F.2d at 351. We contrasted *Gantzer* with *United States v. Borello*, 766 F.2d 46 (2d Cir.1985), where we reversed the admission of prejudicial evidence of the obscene nature of illegally imported material. The difference was that the obscene nature of the imported material was not a "critical element" of the charges faced by the defendant in *Borello*. *Gantzer*, 810 F.2d at 351.

Gilliam's prior conviction is a "critical element" of § 922(g)(1) that cannot be divorced from the crime. It is telling that every circuit court that has considered the issue has decided it similarly. In *United States v. Collamore*, 868 F.2d 24 (1st Cir.1989) (in banc), the First Circuit granted a writ of mandamus to the government to prevent the district court from bifurcating a trial for violation of the predecessor statute to § 922(g)(1). The district court intended to allow the jury to decide the possession issue and then return to hear evidence on the prior conviction element if the jury found posses-

sion. The basis for the First Circuit's decision was the same as the district court's in this case: "when a jury is neither read the statute setting forth the crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime." *Id.* at 28.

Similarly, the Third Circuit upheld a district court's refusal to force the government to accept a stipulation, stating that it "perceive[d] no authority for counsel or the court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime." *United States v. Williams*, 612 F.2d 735, 740 (3d Cir.1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980). *See also United States v. Bruton*, 647 F.2d 818, 825 (8th Cir.) (en banc) (upholding district court's refusal to require the government to accept such a stipulation), *cert. denied*, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981); *United States v. Blackburn*, 592 F.2d 300, 301 (6th Cir.1979) (same); *United States v. Brinklow*, 560 F.2d 1003, 1006 (10th Cir.1977) (same), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *United States v. Torres*, 610 F.Supp. 1089, 1092–93 (E.D.N.Y.1985) (refusing to force government to accept stipulation). Whatever the basis of the reasoning, be it Congressional mandate or the duty of the jury to make a totally informed judgment, there is virtual judicial unanimity in the belief that the jury must be informed of all the elements of the crime charged.

In fact, Gilliam can only point to one case where a court has allowed a defendant to stipulate to the prior conviction element of § 922(g)(1). In *United States v. Orena*, 811 F.Supp. 819 (E.D.N.Y.1992), the district court, over the objection of the government, withheld from the jury any evidence of the defendant's prior conviction because the defendant offered to stipulate to this element. This decision analogized to a line of cases interpreting Fed.R.Evid. 404(b), *id.* at 821–22, which allows the district court to preclude the government from introducing evidence of a defendant's prior conviction in order to prove knowledge or intent where those elements of a crime are not at issue. *See, e.g., Figueroa*, 618 F.2d at 941–42.

There is a significant difference, however, between a rule formulated to limit the admissibility of potentially prejudicial evidence and a rule that eliminates an element of a crime legislated by Congress. Moreover, even under the Rule 404(b) line of cases the jury is still required to find the uncontested element in order to convict. The uncontested element is not removed from the jury's consideration. *See Torres*, 610 F.Supp. at 1093. Rather, the cases interpreting 404(b) allow the district court to do essentially what was done in this case: the defendant does not challenge the element of the crime, the jury is told that the element of the crime is met, but no extraneous evidence to prove that element is introduced. Rule 404(b) does not authorize a district court, either by its own terms or by analogy, to take the issue of the defendant's prior conviction from the jury. Under the 404(b) cases, the jury still knows what crime it is convicting the defendant of, and still knows that the uncontested element exists. The difference is crucial.

The government readily consented to stipulating to Gilliam's prior conviction before the jury, without allowing any prejudicial information about the nature of the conviction. Had the government failed to do so, the district court would have excluded any information about the nature of the prior convictions, since merely the proof of the fact of one conviction would be sufficient for § 922(g)(1). *See United States v. Pirovolos*, 844 F.2d 415, 420 (7th Cir.) (en banc) (holding that the trial judge erred in admitting evidence of prior convictions where the defendant proposed a stipulation to the one sufficient prior conviction), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *cf. United States v. Mohel*, 604 F.2d 748, 754 (2d Cir.1979) (holding that once a stipulation is made to an element of an offense, other crime evidence that might be introduced to prove that element under Fed. R.Evid. 404(b) should be excluded). As noted earlier, it is the *fact* of such a conviction that is pertinent to the statute and to the crime charged, which is why the fact of the conviction cannot be removed from the jury's consideration.

The *underlying facts* of the prior conviction, however, are completely irrelevant to § 922(g)(1). The jury has no need to know the nature of the prior conviction; all that it needs to know is that there was a prior conviction sufficient to sustain that element of the crime. *See generally United States v. Borello,* 766 F.2d 46 (2d Cir.1985) (holding that district court abused its discretion in allowing introduction of evidence pertaining to the nature of obscene illegally imported material, where obscenity of material was not relevant for conviction under the statute). This allows the jury to appreciate the seriousness of the crime, without prejudicing the jury with potentially inflammatory specifics. In such a situation, the Rule 404(b) cases are directly on point: introduction of the underlying facts of the prior conviction would be far more prejudicial than probative where the defendant is willing to stipulate to the simple fact of the prior conviction. *See Figueroa,* 618 F.2d at 939; *Mohel,* 604 F.2d at 754. Even if the prior conviction element of § 922(g)(1) is contested by the defendant, the government is still not entitled to introduce the facts relating to the prior conviction. Instead, the government can only introduce proof of the prior conviction itself.

While the underlying facts of a prior conviction are prejudicial and irrelevant, however, the fact that there was a prior conviction is a crucial element of the crime. Here, Gilliam offered to stipulate not just to the fact of the prior conviction, but the prior conviction element of the crime. Where there was an objection by the government, the district court was correct to reject this proposed stipulation, instead utilizing a strongly worded and quite proper curative instruction to prevent the jury from speculating on the nature of Gilliam's prior conviction. Simply put, it was not error for the district court to refuse to enforce Gilliam's proposed stipulation.

## II. *The Admission of the Anonymous Caller's Statement*

■ During cross-examination of Officer Dempsey, Gilliam's counsel challenged Dempsey on why officers went back to the scene of the arrest and seized Bailey. The purpose of the cross-examination seemed to be to show that Dempsey was harassing Bailey and Gilliam, and to question why Dempsey had not arrested Bailey—the man identified by the anonymous caller—in the first place.

On re-direct, the government asked Dempsey to explain the reasons for the return to the scene, and Dempsey stated over objection that a second call had come in complaining that the police had missed a second gun. According to Gilliam, this was devastating to his theory of defense, which was based on the argument that there was only one gun and it belonged to Bailey, not Gilliam. The statement about the second gun was admitted, however, under the theory that it was not offered to prove the truth of the matter asserted, but only to explain the actions of the police officers in returning to the scene. The district court ruled that since Gilliam's counsel had opened the door to the issue, the prosecution could follow up on it.

Gilliam contends that the district court erred in admitting the statement. Gilliam admits that had the gun been found, it would have been evidence. However, he contends that admission of the caller's statement as to the second gun was inadmissible hearsay.

The Federal Rules of Evidence define hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). There is often a fine line between statements offered to prove the truth of the matter asserted and statements admitted for another purpose. The district court in this case specifically admitted the statement by the anonymous caller to establish the reasons for the return of the officers to the scene, not to prove the truth of the caller's reference to the second gun. *See, e.g., United States v. Hoffer,* 869 F.2d 123, 126 (2d Cir.), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989). Officer Dempsey was clearly relating the anonymous caller's statement to explain why officers returned to the scene and eventually seized Bailey. His testimony was neither offered nor admitted to prove the fact that there was a second gun, and was therefore nonhearsay.

Gilliam argues that the prejudicial effect of the statement substantially outweighed its probative value under Fed.R.Evid. 403. While we recognize that the district court could quite appropriately have excluded or limited the statement under Rule 403, we entrust such decisions to the discretion of the district court. *See United States v. Torres,* 901 F.2d 205, 235 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Here, the district court did not abuse its discretion by allowing the government to respond to Gilliam's counsel's cross-examination of Officer Dempsey, followed by a curative charge. *See id.*

We have examined Gilliam's remaining contentions, and find them to be without merit. The judgment of the district court is hereby affirmed.

WALKER, Circuit Judge, concurring:

I fully concur with the conclusions reached by the majority in this appeal, and write separately only to express my disagreement with one portion of the majority's analysis.

Because the stipulation with respect to Gilliam's felony conviction satisfied the prior conviction element of the charged 18 U.S.C. § 922(g)(1) offense, the majority states that "it [was] by definition not prejudicial" within the meaning of Fed.R.Evid. 403. Majority Opinion at 101. I disagree. I think it is undeniable that the stipulation posed a risk of unfair prejudice to defendant Gilliam. However, because the risk of unfair prejudice did not substantially outweigh the very high probative value of the stipulation, it was properly admitted into evidence.

Rule 403 requires a trial court to determine whether the probative value of evidence on a disputed issue in a case "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Evidence is not unfairly prejudicial to the extent that it serves the proper purpose for which it is potentially admissible. *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980). However, otherwise admissible evidence always poses a risk of unfair prejudice if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403,

advisory committee note; *see United States v. Deutsch,* 987 F.2d 878, 884 (2d Cir.1993). While proof of a prior conviction may be highly probative with respect to an issue in dispute in a criminal case, for example, by tending to prove intent within the meaning of Fed.R.Evid. 404(b), it is unfairly "prejudicial to the extent that it also tends to prove a defendant's propensity to commit crimes." *Figueroa,* 618 F.2d at 943; *see also* Fed. R.Evid. 404(b) (precluding admission of bad acts evidence in the Government's direct case to "prove the character of a person in order to show action in conformity therewith"); *Michelson v. United States,* 335 U.S. 469, 475, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948) (prosecution "may not show defendant's prior trouble with the law" to establish that "he is by propensity a probable perpetrator of the crime").

Rule 403 thus requires trial courts to balance the probativeness of evidence of prior crimes or other "bad acts" against the risk of unfair prejudice. *See United States v. Everett,* 825 F.2d 658, 661 (2d Cir.1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988); *Figueroa,* 618 F.2d at 943. Courts have recognized this repeatedly in the context of Rule 404(b). *See, e.g., Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *Everett,* 825 F.2d at 661; *Figueroa,* 618 F.2d at 943.

A stipulation like the one at issue here is not unfairly prejudicial insofar as the jury employs it, as instructed, to establish that the prior conviction element of § 922(g)(1) is satisfied. However, while a jury might employ the proof of a prior conviction for this proper purpose, as in any case where the Government proffers evidence of prior crimes, there is a risk that the jury might also improperly use it to infer that a defendant has a propensity to commit the charged offense.

Having said that the stipulation posed a risk of unfair prejudice to defendant Gilliam, I do not mean to suggest that it should not have been admitted. Rather, in this or any other § 922(g)(1) case, the probativeness of such a stipulation will never be substantially

outweighed by the risk of unfair prejudice it poses. A stipulation is the least unfairly prejudicial means of satisfying the prior conviction element of § 922(g)(1) available to the Government. But to say, as I do, that a stipulation of prior conviction will always pass muster under Rule 403 is not the same as stating, as the majority does, that "[w]here the prior conviction is essential to proving the crime, it is by definition not prejudicial." Since such a stipulation could be used for an improper purpose, I believe the proper analysis is to regard the stipulation as posing a risk of unfair prejudice, but one that is substantially outweighed by its probative value under Rule 403.

Since I am in full agreement with the majority that the option, suggested by Gilliam, of keeping from the jury knowledge of the prior offense element of the offense would compromise the Government's right to a fair trial and with the majority's conclusion that such a stipulation must be admitted in every § 922(g)(1) case, I concur.